**PERRY GAS TRANSMISSION, INC., Appellant,**

v.

**Sam VEST et al., Appellees.**

**No. 5495.**

Court of Civil Appeals of Texas, Eastland.

Nov. 13, 1980.

Edith H. Jones, Richard Rothfelder, Andrews, Kurth, Campbell & Jones, Houston, Scott C. Shelton, Perry Gas Transmission, Inc., Odessa, for appellant.

Wm. Monroe Kerr, Wm. Robert Parks, Kerr, Fitz-Gerald & Kerr, Midland, Richard D. Bird, Childress, for appellees.

DICKENSON, Justice.

The principal issue in this condemnation case is whether the evidence is legally and factually sufficient to support the jury's findings of market value, before and after taking, of the strip of land actually taken and of the remainder of a large ranch. Perry Gas Transmission, Inc. condemned a pipeline easement across the V–Bar Ranch in Childress County. The ranch is owned by Sam Vest, Individually and as Trustee. Perry Gas also sought and was awarded the right to maintain a road down the pipeline, "and to use existing roads for ingress and egress" to its pipeline. Following a trial by jury, the rancher was awarded judgment for $252,726.06. Perry Gas appeals. We affirm.

The jury's findings may be summarized as follows:

1. The fair market value of the strip of land covered by the easement for pipeline purposes was $8,000.00 before the taking and $1,000.00 after the taking.

2. The average market value per acre of the remainder of the 37,875.45 acres of land in the Vest Ranch, exclusive of the 71.44 acre strip of land covered by the easement for pipeline purposes, was $112.50 per acre before the taking and $106.00 after the taking.

The record shows that on June 16, 1978, Perry Gas condemned a strip of land (which is sixty feet wide) through the middle of the ranch. The Vest ranch contains 37,875.-45 acres, or 59.18 square miles of land. It is more than ten miles from the North boundary of the ranch to the South boundary of the ranch, and the pipeline crosses numerous internal ranch fences. Perry Gas also sought the right to operate, use, construct and maintain roads to their pipeline, the right to maintain a road down the pipeline, and the right to use existing privately owned ranch roads. The trial court's judgment awarded Perry Gas a right of way and easement "for constructing, locating, maintaining, operating, renewing, repairing, inspecting, replacing, restoring and removing one pipeline for the transportation of natural gas over, across, under and upon a strip of land sixty (60) feet in width" across the ranch by reference to a survey line, together with the right "to use a road or maintain a road down the pipeline, and to use existing roads for ingress and egress" to the pipeline. Those existing roads belong to Vest and extend throughout the entire ranch.

Three expert witnesses testified as to the values of the land before and after the taking. The major dispute was over the value of the "remainder of the ranch," on

either side of the sixty foot strip which was taken.

The first expert, Seth Woltz, was called as a witness by the rancher, and the jury accepted his values. Mr. Woltz lives in Seminole, Texas. He has been a professional real estate appraiser, analyst and consultant since 1946. He is past International President of the International Society of Real Estate Appraisers. He has also served as President of the West Texas Chapter in Lubbock and of the Permian Basin Chapter in Midland and Odessa. He has qualified for three different professional designations: S.R.A. (senior residential appraiser), S.R.P.A. (senior real property appraiser), and S.R.E.A. (senior real estate analyst). He has taught many courses and spoken on the subject throughout the United States and Canada. He has written several articles for publication. He helped organize the Right-of-Way Department for the Texas Highway Department. He has done appraisal work for many of the agencies of the federal government. His "normal territory" is about seven states, and he has testified as an expert witness many times, sometimes for the landowners and sometimes for the condemning authorities. He appraised for the federal government when they acquired the land for Big Bend National Park, Texas, Carlsbad Caverns National Park, New Mexico and White River National Park, Arkansas. He has evaluated many cattle ranches. He and his employees spent about 40 to 45 man days of work in evaluating the market value of the Vest Ranch and the effect of the pipeline. He described the "animal unit" valuation of a ranch, which is referred to by the Soil Conservation Service as a "safe stocking rate." He testified that ranch land is sometimes valued on a "cost per animal unit" by typical buyers and sellers of this type property. This is a way of ascertaining market value, or what a willing buyer would pay and what a willing seller would accept. In forming his judgment as to the values of the Vest ranch, he considered a combination of things: a study of the prevailing market conditions, price being paid per animal unit, the condition of the ranch, the management

that was involved, and whether it was ready to go or would require a lot of money to get it ready. He testified that the highest and best use of the property was a "mother cow" cattle operation. Other witnesses testified that this is the current use of the ranch and as to the condition of the ranch and its improvements. Mr. Woltz said that the range of value for animal units on ranches of the approximate size of the Vest Ranch in June of 1978 was from $2,500.00 to $2,900.00 per animal unit. He then testified as to the factors, such as availability of water, condition of fences, and distractions, which influence the market value per animal unit. Mr. Woltz testified that the Vest Ranch equated to 1,600 animal units, at a before condemnation value which he appraised at $2,665.00 per animal unit, or $4,264,000.00. That gives a value of $112.50 per acre for the entire ranch. He testified that the market value of the Vest ranch was reduced from $112.50 per acre to $106.00 per acre because of the gas pipeline and the rights of ingress and egress. He also testified that the value of the 71.44 acre strip of land was reduced about $7,000.00 in value, from a value of approximately $8,000.00 before the condemnation of the easement.

The second expert, Sam Adams, was called by Perry Gas. Mr. Adams lives at Wellington, Texas. He is part-time in real estate and part-time in construction. He attended some extension courses of Amarillo College at the Complex in Wellington. He evaluated the Vest Ranch at $125.00 per acre prior to the taking. He testified that clearing the right-of-way actually increased the value of the 71.44 acre strip and that there was no change in value as to the rest of the ranch. On cross-examination he agreed that real estate is the minor end of his work and that building houses is the major part of his work. .

The third expert, Calvin Taylor, was called by Perry Gas. Mr. Taylor lives at Richland Springs, near Brownwood, Texas. He is a rancher, and he has also been in the appraisal business for 18 years. He did some right-of-way appraisals for the Texas

Highway Department in the Brownwood area. He attended highway department seminars and a school sponsored by the Society of Real Estate Appraisers. He has also done appraisals for banks and savings and loan associations in Brownwood and Brady, for the Small Business Administration and for the Internal Revenue Service. He valued the Vest Ranch at $150.00 per acre before the taking of the easement. He valued the strip taken at $22.50 per acre after the taking. As to the remainder of the ranch, he testified there was no reduction in market value because of the pipeline easement.

■ Perry Gas has briefed twelve points of error. The first five points argue that there was no competent evidence, or in the alternative insufficient competent evidence, to support the jury's finding of damages to the "remainder of the Vest Ranch after the taking." These points must be overruled, for we find that the evidence set forth above is legally and factually sufficient under the tests stated by *In re King's Estate*, 244 S.W.2d 660 (Tex.1951).

In a recent condemnation case, the Amarillo Court stated in *Southwestern Public Service Company v. Vanderburg*, 581 S.W.2d 239, at 244 (Tex.Civ.App.—Amarillo 1979, writ ref'd n. r. e.):

> Whether a witness is qualified to testify regarding market value of property is largely within the sound discretion of the trial court. . . . A statement by the witness that he knows the land in question and is acquainted with the market value is sufficient to authorize the reception of his valuation testimony. . . .
>
> . . . (T)he question of a reduction in market value of the remainder as raised by the conflicting opinion testimony is peculiarly one for the fact finding body. . . .
>
> . . . The specific elements testified to as resulting from the easement taking and relating to and tending to affect the market value were admissible, not as the measure of damages but as elements to enable the jury to arrive at the correct market value. . . .

■ Point six argues that the trial court erred in admitting evidence of temporary inconvenience which Vest incurred during construction of the pipeline. This point is overruled. Much of the testimony was admitted without objection. The two objections were made after the testimony of delay in construction had been admitted without objection. Perry Gas has not shown reversible error under Tex.R.Civ.P. 434.

■ Point seven argues that the trial court erred in admitting evidence concerning the possibility of Perry Gas' employees leaving a gate open and damaging the cattle operation. This point is overruled. The testimony was admissible insofar as it related to the expert's explanation of his opinion as to the reduction in market value of the ranch, resulting from the pipeline and the rights of ingress and egress. As our Supreme Court said in *Texas Pipe Line Co. v. Hunt*, 228 S.W.2d 151, at 155 (Tex.1950):

> (T)he issue of depreciated market value, which is the ultimate one in such cases, is largely a matter of opinion evidence, and a very wide range of factors may be legitimately taken into consideration by qualified witnesses as the foundation for their opinions. It may well be, as argued, that if the opinions should be shown to be based exclusively upon considerations of remote, fanciful or otherwise incompetent character, they would have to be disregarded, but, all opinion being at best something of a speculation, it does not cease to have probative force when impropriety attaches only to some, rather than all, of its underlying reasons. The question of market value is thus peculiarly one for the fact finding body, subject to the control of the court in the manner indicated in the *Carpenter* case. (*State v. Carpenter*, 89 S.W.2d 194 [Tex.Com.App. 1936, opinion adopted]).

Point eight argues that the jury argument of the rancher's lawyer contained incurable error. We disagree. It should be noted that Perry Gas made no objection to the jury argument during the trial, arguing

on appeal that the argument "constituted incurable error" which could not have been corrected by an instruction from the trial judge to the jury. Perry Gas has not discharged its burden of showing incurable error under the test stated in *Standard Fire Insurance Company v. Reese,* 584 S.W.2d 835, at 839 (Tex.1979). See also 3 McDonald, Texas Civil Practice §§ 13.07, 13.-11.4, 13.15, 13.17.1, 13.17.2 (Rev.1970).

■ Point nine argues that jury misconduct requires a new trial. We disagree. The statement by a juror that "any money damages paid by Perry Pipeline would be passed on to the customer" was promptly challenged by the foreman who reminded the jurors that they are to "only consider the evidence presented." Perry Gas has not established material misconduct which probably resulted in harm under the test stated in *Fountain v. Ferguson,* 441 S.W.2d 506 (Tex.1969), *cert. denied,* 396 U.S. 959, 90 S.Ct. 433, 24 L.Ed.2d 424 (1969). See also *Strange v. Treasure City,* Tex., 608 S.W.2d 604 (1980).

Points ten and eleven request a remittitur of at least $200,000.00. Point twelve argues that cumulative errors require a new trial. These three points have been considered, and they are overruled. The damages to the ranch were greater than Perry Gas anticipated when it put its pipeline through the center of the large ranch and took by condemnation the right of ingress and egress to the pipeline over the privately owned ranch roads which extend throughout the entire ranch. These damages could have been reduced by Perry Gas if it had placed a limitation on the rights of ingress and egress which were taken by condemnation, and the damages could have been minimized by locating the pipeline along the edge of the ranch instead of going through the middle of the ranch over the landowner's objections.

The judgment of the trial court is affirmed.